**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 04-6025**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

WILBERT HACKLEY, JR., a/k/a Butch,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.   Robert E. Payne, District Judge.   (CR-83-107)

Argued:  November 29, 2005          Decided:  January 4, 2006

Before WILKINSON, MICHAEL, and MOTZ, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Steven H. Goldblatt, Director, GEORGETOWN UNIVERSITY LAW CENTER, Appellate Litigation Program, Washington, D.C., for Appellant.  Richard Daniel Cooke, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.  **ON BRIEF:** Kathy J. Huang, Student Counsel, Nathan J. Novak, Student Counsel, GEORGETOWN UNIVERSITY LAW CENTER, Appellate Litigation Program, Washington, D.C., for Appellant. Paul J. McNulty, United States Attorney, Michael J. Elston, Assistant United States Attorney, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Wilbert E. Hackley brings a collateral attack under 28 U.S.C. § 2255 (2000) to his conviction on charges arising out of his participation in a murder during a prison riot. Hackley relies on allegations by fellow inmates who suggest they told the government that Hackley was not involved in the murder and that the government pressured them to remain silent, in violation of Brady v. Maryland, 373 U.S. 83, 87 (1963). The district court denied Hackley's request for an evidentiary hearing. We affirm because Hackley cannot show that "there is a reasonable probability that the suppressed evidence would have produced a different verdict." Strickler v. Greene, 527 U.S. 263, 281 (1999).

I.

On April 20, 1984, a jury found petitioner Wilbert E. Hackley and his codefendants guilty on charges stemming from their involvement in a prison riot and the murder of Gregory Gunter. It convicted Hackley on four counts: murder, 18 U.S.C. § 1111 (2000), attempting to cause and assist in a mutiny and riot, id. § 1792, conveyance of a weapon within a federal penal institution, id. § 1791, and assaulting and impeding an officer of a United States penal institution, id. § 111. On May 1, 1984, the district court sentenced Hackley to life in prison and three consecutive ten-year sentences for his crimes. This court affirmed his conviction on

direct appeal, noting that "evidence of guilt as to each defendant and each count was overwhelming."  See United States v. Hackley, No. 84-5149(L), slip op. at 9 (4th Cir. Apr. 24, 1985).

Inmates murdered Gunter during a riot at the Petersburg, Virginia Federal Correctional Institution on December 25, 1982. Hackley was an inmate at the prison and Gunter was a correctional officer and construction and maintenance foreman.  The riot started in the prison dining hall when inmates from New York began fighting with inmates from the District of Columbia.  Correctional officers rounded up the New York inmates and escorted them out of the dining hall into the prison compound.  As they were leaving, a New York inmate cast a concrete urn through a dining hall window.  The District of Columbia inmates subsequently armed themselves with items appropriated from the prison kitchen and pursued the New York inmates through the broken window.

Gunter, who was off duty at the time, was radioed about the disturbance and entered the compound.  He attempted to stop the District of Columbia inmates, but six to eight of them attacked him.  An inmate struck him in the head with a three-foot long soup paddle, and other inmates beat and stabbed him.  The medical examiner noted that Gunter was stabbed eight times and had blunt-impact injuries on his face consistent with the soup paddle.  He died of his wounds.

4

Numerous correctional officers present during the riot either testified directly that Hackley wielded the soup paddle against Gunter or offered corroborating support for that conclusion. Officers Donnie Smith, J.R. Randle, and Hulon Willis had an unobstructed view of the unfolding events from a cellblock facing the compound. Smith identified Hackley as the inmate who hit Gunter with the soup paddle. Randle, who had known Hackley by sight and name before the riot, also testified that Hackley struck Gunter with a soup paddle. Willis could not recognize Hackley as the perpetrator, but he noted that Randle identified Hackley during the attack. Officer Robert Lagoda did not witness the attack, but he did see Hackley carrying an aluminum paddle in the compound. Officer Freddie Mercado was in the compound during the incident, and identified Hackley as an attacker who carried a paddle. Officer Paul McCauley, also in the compound, testified that he saw an inmate hit Gunter with a soup paddle, but he did not have a clear view of the perpetrator. Finally, Officer Chauncey Jones testified that he saw Hackley hitting Gunter with a silver weapon that was consistent with the paddle.

Several inmates testified similarly as to Hackley's involvement. Both Hugh Jackson and Carroll Fortun attested that they were in the compound during the attack and saw Hackley strike Gunter with a paddle. Ronald Kelly did not see the attack on

5

Gunter, but testified that he saw Hackley standing over Gunter after Gunter had collapsed to the ground.

On April 4, 2000, sixteen years after his conviction, Hackley filed a petition in Pennsylvania under 28 U.S.C. § 2241 (2000). His petition was eventually transferred to the Eastern District of Virginia and treated as one under § 2255. On July 8, 2002, Hackley provided an amended § 2255 motion. The district court determined that Hackley's pro se motion alleged two prosecutorial misconduct claims based on Brady v. Maryland, 373 U.S. 83 (1963), and an actual innocence claim. The evidence in his petition included a letter from inmate Ronald Kelly; affidavits from Michael Anthony Hood and Ken Anderson, two inmates present during the riot who did not testify at the original trial; and newspaper articles about Officer Jones's conviction for beating inmates after the riot.

Ronald Kelly wrote a letter to a federal judge in the state of Washington on April 16, 1990, that recanted his testimony six years after the trial. Kelly noted that after the riot he could not identify Hackley as an attacker in a photographic spread, but conceded the point when an FBI agent held up Hackley's picture and said Hackley was present. Kelly also stated that he told Assistant U.S. Attorney George Metcalf that other inmates, including Hugh Jackson, had fabricated their testimony. Metcalf allegedly threatened him in response to these allegations. Hackley received a copy of this letter in 1990. He sent it to his grandfather where

6

it was lost and not recovered until November 1999.  His first use of the letter was in this petition.

Two former inmates, Michael Anthony Hood and Ken Anderson, provided affidavits on June 17, 2002, and August 14, 2002, respectively, that gave Hackley an alibi during Gunter's murder. Hood summarily asserted that he witnessed the murder and that Hackley was absent, but he did not indicate the inmates responsible.  Both Anderson and Hood averred that Hackley was inside Virginia Hall, a housing unit separated from the murder scene, during the prison riot.  Anderson allegedly spoke with Hackley a half-hour into the riot.  After the riot, Hood stated that he told Officer Jones that Hackley was not involved, but Jones beat him until he retracted his statements and implicated Hackley. Hood asserts that fear prevented him from coming forward with this information sooner, and Anderson noted that he was unaware Hackley was convicted of the Gunter murder until 2002.

The district court denied all grounds of relief on November 4, 2003, without an evidentiary hearing.  It initially noted that the one-year statute of limitations barred Hackley's first Brady claim, which was based on the Kelly letter.  See 28 U.S.C. § 2255.  It then concluded that Hackley's second Brady claim, based on the Hood affidavit, failed on the merits, because Hackley could not meet the materiality requirement necessary for such a  claim.  See Strickler v. Greene, 527 U.S. 263, 281 (1999).  The district court also

7

dismissed Hackley's actual innocence claim, which was based on all of his new evidence, because he failed to prove that no reasonable jury would have convicted him if it took into account the new evidence. See Schlup v. Delo, 513 U.S. 298, 327 (1995).

Hackley subsequently filed a request for a certificate of appealability (COA), as required by 28 U.S.C. § 2253(c)(1)(B). The district court did not issue a COA for either Hackley's first Brady claim or his actual innocence claim. It did, however, grant Hackley a COA as to the second Brady claim, based on the Hood affidavit. On July 27, 2004, we rejected Hackley's application to expand the COA. Hackley appeals his certified claim and also requests that we reconsider our previous refusal to enlarge the COA.

## II.

Hackley first argues that the district court erred in denying an evidentiary hearing on the Brady claim stemming from the Hood affidavit. A district court can deny a § 2255 motion without a hearing if the record conclusively shows the prisoner is not entitled to relief. See 28 U.S.C. § 2255.

Under Brady, the government violates due process when it fails to provide a defendant with material exculpatory evidence. See Strickler, 527 U.S. at 280; Brady, 373 U.S. at 87. In order to prove a Brady violation, the defendant has to meet three

8

requirements: (1) the evidence must be favorable to the accused, (2) the government must have suppressed it, and (3) the defendant must suffer prejudice. See Strickler, 527 U.S. at 281-82.

To meet the prejudice prong, the defendant has to show that the suppressed evidence is material. Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Strickler, 527 U.S. at 280 (internal quotation marks omitted). In determining whether a reasonable probability exists, courts consider "whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Id. at 290 (internal quotation marks omitted).

We assume without deciding that Hackley's claim based on the Hood affidavit satisfies the first two Brady requirements and turn to materiality.[1] Hackley argues that in assessing materiality we should consider the Kelly letter as evidentiary support for the Hood affidavit even though, standing alone, it would be time-barred. It is far from certain that we can consider the Kelly letter at all given that Hackley discovered it ten years before he

---

[1]The district court found this claim was timely filed because Hackley could not have discovered the facts supporting it prior to June 17, 2002. See 28 U.S.C. § 2255. We assume it is timely.

9

filed a claim. But even assuming we can, Hackley's <u>Brady</u> claim still falls short of satisfying materiality.[2]

As this court made clear on direct appeal, the evidence against Hackley on all counts was "overwhelming." <u>See</u> <u>Hackley</u>, No. 84-5149(L), slip op. at 9. Considering the new evidence, the government's case against Hackley is not put in "such a different light as to undermine confidence in the verdict." <u>Strickler</u>, 527 U.S. at 290 (internal quotation marks omitted); <u>see also</u> <u>United States v. Ellis</u>, 121 F.3d 908, 918 (4th Cir. 1997) (noting that courts do not ignore other evidence of guilt presented at trial in assessing materiality). The key government witnesses who place Hackley at the murder scene or with the paddle are unaffected by the new evidence. Officers Smith and Randle identified Hackley as the attacker who hit Gunter with a soup paddle. Officer Mercado similarly testified that Hackley was an attacker who had a paddle. Officer Lagoda saw Hackley in the compound with a paddle during the riot. And inmate Fortun testified that he saw Hackley strike Gunter. Against these numerous eyewitness accounts, Hood's terse statement that Hackley was not in the compound and Kelly's letter undermining the credibility of inmate witnesses pale in comparison.

---

[2]Hackley does not contend that the government suppressed the information in the Anderson affidavit. That affidavit is thus not <u>Brady</u> material and does not support Hackley's <u>Brady</u> claim.

10

Moreover, the Hood affidavit is of questionable reliability. Although Hood now provides Hackley with an alibi -- that Hackley was in Virginia Hall -- Hackley does not contend that he advanced this theory at trial. Nor has Hackley provided any indication as to why he did not present witnesses to testify as to his location in Virginia Hall. Hackley would have known others were around him if he truly was in Virginia Hall at the time of the murder. Anderson, for example, allegedly spoke with him in Virginia Hall during the riot. As a separate matter, Hood's long delay in coming forward casts further doubt on his credibility. Hood suggests that he was afraid of Officer Jones who allegedly beat him, but, as the district court noted, he was transferred away from Jones before he presented his affidavit. Finally, Hood's statements come almost twenty years after the fact, and his memory as to the events that occurred is therefore less reliable.

The Kelly letter also does little to put the original verdict in a different light. See Strickler, 527 U.S. at 290. The government has provided a sworn affidavit in the record from Assistant U.S. Attorney Metcalf that disputes Kelly's assertions. Metcalf averred that Kelly's accusations were untrue and that he had no knowledge that any inmate falsely testified. See also Evans v. United States, No. 83-00107-02-R, slip op. at 4 (E.D. Va. May 22, 1995) (relying on Metcalf's affidavit to reject the § 2255 petition of Hackley's codefendant, also predicated on the Kelly

11

letter).  Further, Kelly's letter effectively recants much of his trial testimony, and recantation statements are necessarily viewed with considerable skepticism.  See, e.g., United States v. Johnson, 487 F.2d 1278, 1279 (4th Cir. 1973) (per curiam) (recantation testimony "looked upon with the utmost suspicion") (internal quotation marks omitted); see also Wadlington v. United States, 428 F.3d 779, 784 (8th Cir. 2005) (same); United States v. Ogle, 425 F.3d 471, 478 (7th Cir. 2005) (same).

In short, Hackley's contentions would require the jury to ignore the "overwhelming" evidence of guilt and to rely on Kelly's and Hood's suspect eleventh-hour statements.  As such, these belated statements simply cannot satisfy Hackley's burden of proving there is a reasonable probability that the jury verdict would have been different if they had been considered.  Strickler, 527 U.S. at 280.  Hackley has thus failed to prove materiality.[3]

---

[3]Hackley also argues that we should reconsider our previous refusal to issue a COA for his actual innocence claim.  But that claim is even more difficult to bring than a Brady claim, as it requires the petitioner to prove that "no reasonable juror would have convicted him in the light of the new evidence."  Schlup, 513 U.S. at 327.  Even with all of Hackley's newly proffered evidence, a reasonable juror could most certainly still have convicted him. We therefore decline to issue a COA on this claim.

12

III.

For the foregoing reasons, the district court did not err in dismissing Hackley's § 2255 petition without an evidentiary hearing.

<u>AFFIRMED</u>

13